CHAPMAN *et al.* v. THE KANSAS CITY, CLINTON & SPRINGFIELD RAILROAD COMPANY, *Appellant.*

### Division One, March 13, 1893.

1. **Contract**: UMPIRE. Parties to a contract may agree that the classification, quantity or quality of the work done or things furnished shall be left to the judgment of a third person and that his estimate shall be final.

2. ———: ———. Such stipulation to be enforced need not in terms provide that the decision of the third person shall be final.

3. ———: ———: RAILROAD: INSPECTION OF TIES. Under a contract providing that railroad ties to be furnished by plaintiff to defendant should conform to certain specifications set out therein and that the ties should be subject to inspection by any inspectors whom the defendant company might send, the latter was not bound to accept or pay for any ties rejected by its inspector.

4. **Practice**: WRITTEN CONTRACT: PROVINCE OF COURT. It is the province of the court and not of the jury to interpret a written contract.

*Appeal from Dade Circuit Court.*—HON. D. P. STRATTON, Judge.

REVERSED AND REMANDED.

*Wallace Pratt, C. B. McAfee* and *J. C. Cravens* for appellants.

(1) This action is one at law, based upon a contract sued upon, introduced in evidence and relied upon by plaintiffs, which contract provides, "that the ties are to be subject to inspection by any inspector defendant might be pleased to furnish." Plaintiffs themselves testified that defendants accepted and paid for all the ties that passed inspection; therefore plain-

tiffs cannot recover on said second assigned breach. Pierce on Railroad Law, 381; *Wood v. Railroad*, 39 Fed. Rep. 52; *Railroad v. Bradley* 44 N. W. Rep. (Minn.) 1; *Kihlberg v. United States*, 97 U. S. 398; *McAvoy v. Long*, 13 Ill. 147; *Railroad v. Northcote*, 15 Ill. 49; *McAirley v. Carter*, 22 Ill. 53; *Railroad v. Spurck*, 24 Ill. 587; *Snell v. Brown*, 71 Ill. 133; *Coey v. Lehman*, 79 Ill. 173; *Lull v. Krof*, 84 Ill. 225; *Dinsmore v. Livingston Co.*, 60 Mo. 244; *Neeman v. Donoghue*, 50 Mo. 492; *Estate v. Railroad*, 56 Mo. 282. (2) The whole of plaintiffs' testimony on second breach admitted over the objections and exception of the defendant is an attack upon the good faith, fairness and sufficiency of the inspections by which the ties they seek pay for were rejected. And there being no allegation in the petition of bad faith, unfairness or fraud in the inspections, it was reversible error to admit such testimony. *Wood v. Railroad*, 39 Fed. Rep. 52, *supra*, and authorities cited; *McAvoy v. Long*, 13 Ill. 147; *Railroad v. Northcote*, 15 Ill. 49. (3) Even if the pleadings had been so framed as to have permitted an inquiry into the conduct of the inspectors, still all the testimony of plaintiffs on that point ought to have been excluded or not admitted on defendant's objections that the witnesses were not shown to be experts, or at all qualified to give opinions as to the quality of ties or use of ties in railroad tracks. *Nelson v. Ins. Co.*, 71 N. Y. 453; *Muldowney v. Railroad*, 36 Iowa, 472; *Walton v. Railroad*, 40 Mo. App. 544; *Hart v. Railroad*, 84 N. Y. 56; *Teerpenning v. Ins. Co.*, 43 N. Y. 283; *Wright v. Williams*, 47 Vt. 222. (4) The court committed reversible error in giving its fifth and seventh instructions over defendant's objections and exceptions. *Streeter v. Streeter*, 43 Ill. 155; *McAvoy v. Long*, 13 Ill 147; *Railroad v. Northcote*, 15 Ill. 49; *Sigsworth v. McIntire*, 18 Ill. 127, and authorities cited.

*B. G. Boone, Mann & Talbott, Geo. L. Mann* and *Thurman & Wray* for respondents.

(1) Neither the motion for a new trial nor the assignment of errors are sufficiently specific to entitle the court to pass on the question of the admissibility of the evidence, or the questions raised by instructions of the court. The motion for a new trial should have pointed out with reasonable certainty the rulings of the court complained of in admitting or rejecting testimony, and designated by numbers or in some other way with reasonable certainty the instructions that error is complained of in giving or refusing. 2 Thompson on Trials, sec. 2756; *Schultz v. Moon*, 33 Mo. App. 329; *McGarry v. Railroad*, 36 Mo. App. 345; *Honeycutt v. Railroad*, 40 Mo. App. 674; *Fox v. Young*, 22 Mo. App. 386; *McKensie v. Railroad*, 24 Mo. App. 392. (2) It was not necessary for respondent in its petition to state the facts showing performance of the contract on its part. The general allegation that it had duly performed the contract on its part is sufficient. Revised Statutes, 1889, sec. 2079; *Richardson v. Ins. Co.*, 57 Mo. 413; *Okey v. Ins. Co.*, 29 Mo. App. 105; *Russell v. Ins. Co.*, 55 Mo. 585. *First.* Mere defects and informalities in pleadings will be disregarded on appeal where the exception is taken to the introduction of testimony or on motion in arrest of judgment, as in the case at bar. *Sayer v. Devore*, 99 Mo. 437. *Second.* If the petition was not sufficiently specific, appellant's remedy was by motion to make more specific, and not by motion in arrest of judgment. The judgment will not be arrested when enough can be gleaned from the petition to show that plaintiff has a cause of action, no matter how defectively stated. *Corpenny v. Sedalia*, 57 Mo. 88; *Pomeroy v. Benton*, 57 Mo. 550; *State ex rel. v.*

*Williams*, 77 Mo. 467, and cases cited. (3) The phrase used in the contract, "subject to inspection by any inspector whom we may see proper to send," means the right to have a person skilled in the business pass on the quality of the ties as an additional safeguard to appellant. *Clacius v. Black*, 50 N. Y. App. 145; *Bird v. Smith*, 64 E. C. L. R. 785; *Camors v. Gomila*, 9 Mo; App. 205. When such contracts expressly provide that an inspection shall be binding on both parties and final without appeal, the courts in many of the states have refused to uphold them. *Baner v. Sampson*, 102 Ind. 262; *Supreme Council v. Garrigus*, 104 Ind. 133; *Kisler v. Indianapolis*, 88 Ind. 460; *Mentz v. Ins. Co.*, 79 Pa. St. 478; *Wood v. Humphreys*, 114 Mass.; *Ins. Co. v. Morse*, 20 Wall. 445. (4) If it had been expressed in the contract that the inspection contemplated by it was to be final and binding on both parties, the fact that appellant failed and refused to inspect or receive the ties for more than six months, and until after it had repudiated the contract by notice to respondent, would constitute a waiver of such right to bind the respondent by its inspection made subsequent to said breach, and the opinion of its inspectors is entitled to no more weight than that of any other witness equally well informed. *Daubin v. Edmunds*, 18 Mo. App. 307; *Boteler v. Roy*, 40 Mo. App. 234; *Black River Lumber Co. v. Warner*, 93 Mo. 374; *Little v. Mercer*, 9 Mo. 218. (5) Instruction marked "D" asked by appellant was properly refused. It was clearly a comment on the testimony. The jury is the judge of what weight should be given the testimony of witnesses. *Jones v. Jones*, 57 Mo. 138; *Leeser v. Boekhoff*, 33 Mo. App. 237; *Forrister v. Moore*, 77 Mo. 660; *Rothschilds v. Ins. Co.*, 62 Mo. 356; *Copp v. Hardy*, 32 Mo. App. 588. (6) The allegations in

the petition submitted to the jury constitute but one count, one cause of action, one transaction, to-wit, the failure of appellant to receive and pay for ties as required to do by the contract, which resulted in the damages assessed by the jury, consisting of the contract price for ties delivered and the net profits to respondent for ties they could have delivered but for the breach of the contract to "receive and pay for ties," and a general verdict is the only one the jury could have properly rendered. *Campbell v. King*, 32 Mo. App. 38; *Lancaster v. Ins. Co.*, 92 Mo. 460; *Newton v. Miller*, 49 Mo. 298; *Brady v. Connelly*, 52 Mo. 19; *Edwardson v. Gorhart*, 56 Mo. 86; *McKee v. Calvert*, 80 Mo. 348; *State v. Jackson*, 90 Mo. 156. (7) Even in a suit on a contract where there are several breaches assigned, each does not constitute an independent cause of action, but, on the contrary, a single cause of action, and the assignment of breaches in such cases are used as a convenient means of setting out the different elements of damage. *State v. Davis*, 35 Mo. 406; *Fisk v. Tank*, 12 Wis. 276; *People v. Tweed*, 5 Hun, 353; *State v. Henslee*, 54 Mo. 518; *State v. Berning*, 74 Mo. 87; *Langford v. Sanger*, 40 Mo. 161.

BLACK, P. J.—This is a suit to recover damages for an alleged breach of contract. The defendant railroad company, acting through its agent, H. P. Jacques, and William Chapman acting for himself, executed the following contract on January 26, 1886:

"Memorandum of agreement made with William Chapman, of Osceola, Missouri. The Kansas City, Clinton & Springfield Railroad Company agrees to take from William Chapman, during the year 1886, two hundred thousand ties, seven and eight-inch specifications. The eight-inch ties to be forty cents each, and the seven-inch ties to be thirty-five cents each, on right of way.

Said Chapman agrees to deliver the ties at the rate of not less than fifteen thousand per month from this date. The ties subject to inspection by any inspector whom we may be pleased to send. Not more than twenty-five per cent of the ties to be seven-inch face."

It appears William Chapman cut or had cut and delivered a portion of the ties mentioned in this agreement, but he failed to make full compliance with its terms. He sold out his interest in the contract to J. H. Chapman and C. J. Harrison, the plaintiffs in this suit, who proceeded with the work. Mr. Jacques, still acting for the defendant, sent to the plaintiffs the following letter, the terms of which were accepted by them in writing on November 30, 1886:

"GENTLEMEN: Referring to the contract made with you January 26, 1886, for two hundred thousand ties, seven and eight-inch specifications, this contract will be extended until filled, provided that the remainder are put out at the rate of not less than ten thousand per month. If this contract is carried out as per above, and is satisfactorily filled, you will be allowed to continue to get out ties on the territory you now have for the year 1887, provided you will agree not to furnish less than ten thousand ties per month, first class ties, the price to be the same as under contract January 26, 1886."

The plaintiff completed the first of these contracts about the month of March, 1887, and then proceeded to furnish ties under the renewed contract.

The breaches alleged are: *First*, that defendant failed and refused to accept and pay for forty thousand ties which the plaintiffs had placed on defendant's right of way; *second*, that defendant refused to allow the plaintiffs to get out ties under the contract after the first of July, 1887, whereby they lost a profit of five cents per tie on one hundred and eighty thousand.

The evidence tends to show that the inspections made under the first contract were very liberal to the plaintiffs; that Mr. Jacques complained of the ties furnished as far back as February, 1887. The plaintiffs in a letter to him admitted that the ties furnished south of a stated point on the line of the road were below the average.

It appears the defendant made the contract for the purpose of increasing the freight receipts, and intended to sell the ties to other roads. Plaintiffs were informed of this fact; and on the eighth of March, 1887, Mr. Jacques gave them full warning that the ties before received were not up to the contract standard and they must expect a more rigid examination. In the month of July, 1887, the plaintiffs stopped getting out ties in view of a correspondence between them and Mr. Jacques, but ties then in the woods were hauled to the right of way for inspection and delivery.

A large number were inspected and accepted in January, 1887, again in April of that year, and again in November. The plaintiffs claimed that this last inspection was too close, and they refused to allow the inspectors to go over all the yards. There was a further inspection in March, 1888, by which some thirty-one thousand were received and others left as rejected. These rejected ties constitute the subject of the first alleged breach. It is conceded that defendant paid for all the ties that passed inspection. There was much evidence introduced as to what constitutes a seven and eight-inch specification tie.

The court gave the following instruction asked by the plaintiffs:

"If you believe from the evidence that, at the time the contract sued on was made, it was the understanding between the plaintiffs and the defendant, that the clause in said contract, to-wit: 'The ties subject to

inspection by any inspector whom we may be pleased to send,' was not intended to mean that the plaintiffs should be bound by the decision of the inspector, then the defendants were bound by said contract to receive and pay for all ties delivered on the right of way of the Kansas City, Clinton & Springfield Railroad Company by the plaintiffs, in quantities not less than ten thousand per month, provided the same were eight and seven-inch specifications and not more than twenty-five per cent of the same seven-inch specification ties."

And refused, among others, the following instruction asked by the defendant:

"That under said contract sued upon, and under the pleadings defendant was not bound or required to accept, receive or pay for any ties rejected or refused by inspectors sent or furnished by defendant to inspect such ties."

The court erred in both of these rulings. The defendant's instruction should have been given and the other one refused. The parties to a contract may agree that the classification, quantity or quality of work done or things furnished shall be left to the judgment of a third person, and that his estimate shall be final, and such a stipulation is valid and will be enforced. *Neenan v. Donoghue*, 50 Mo. 493; *Dinsmore v. Livingston Co.*, 60 Mo. 244; *Williams v. Railroad*, 112 Mo. 463; *Kihlberg v. United States*, 97 U. S. 398. This principle of law is not seriously controverted here, but the plaintiffs insist that such a stipulation to be enforced must in terms provide that the decision of the third person shall be final. We do not so understand the law.

In *McAvoy v. Long*, 13 Ill. 147, a case often cited, the contract allowed the plaintiff twelve and one half cents per cubic yard for digging a ditch, and provided how the work should be measured, and contained this further clause: "The above measurement to be made

by David L. Hodges." There was no express stipulation that his measurement should be final, and yet it was held that it was conclusive upon the parties, in the absence of fraud. A third person may be made the arbiter of the compliance with the conditions of a contract, and a promise may be made conditional upon the act of a third party, and such conditions are valid. It is not necessary that the contract say in express terms that the decision of the third person shall be final. It is enough that the condition which is to be performed before payment is stated. When stated it must be performed, if not waived, like any other condition precedent. Leake on Contracts, 639; 1 Wharton on Contracts, sec. 593.

Now there can be no doubt but the two agreements must be taken together for the purpose of ascertaining all the terms of the renewed contract for 1887. As to this there is no dispute. The plaintiffs, however, insist that the clause "the ties subject to inspection by any inspectors whom we may be pleased to send" means no more than this, that defendant had the right to have its inspectors examine the ties to determine for itself, but for no other person, that they were up to the contract standard. This construction simply eliminates the stipulation from the contract; for the ties were to be placed on the defendant's right of way, and it had the right to examine them through inspectors or otherwise without the stipulation. This clause means that the ties found to be up to the contract by the inspectors and those only would be received and paid for. This is clear, whether we read the contract by itself or in the light of the interpretation placed upon it by the parties themselves; for the proof shows without contradiction or dispute that those ties and those only which were accepted by the inspectors were received and paid for. This was the practice from the begin-

ning to the end. The correspondence between Mr. Jacques and plaintiffs shows that they at all times understood the ties must be inspected and by the inspectors accepted before payment.

The petition makes no charge of fraud or collusive conduct on the part of the inspectors. That the defendant did furnish inspectors for the purpose of examining all of the ties, stands conceded on the case made by the evidence, and this being so, before the plaintiffs can recover for any ties they must show that they were accepted by the inspectors. This they utterly failed to do. It was for the court and not the jury to interpret the written contract.

This case was tried by the court on a misconception of the purport of the contract and of the law applicable to it from the first to last, and this being so it would be useless to go over the other branch of the case. The judgment is reversed and the cause remanded. All concur.