THOMAS MOCKLER, Appellant, v. ST. VINCENT'S INSTITUTION, Respondent.

**St. Louis Court of Appeals, March 4, 1901.**

1. **Building Contract: WRITTEN CONTRACT: ARCHITECT'S CERTIFICATE.** In the case at bar, the architect's certificate was not signed by the architect himself; did not confine its estimate to the structure described in the contract, nor did it recite that the work estimated was performed to the satisfaction of the architect, hence it was not determinative of defendant's liability as it would have been if made in strict accordance with the special written contract of the parties.

2. **Interlineation in Written Specifications: FRAUDULENT INTERLINEATION IN CONTRACT: INSTRUCTION: FRAUD: MISTAKE.** The following instruction in nowise contravenes the rule that parties to written contracts are conclusively presumed to note

their contents in the absence of fraud or mistake: "The court instructs the jury that if they believe from the evidence an interlineation in the brickwork specifications providing for the payment of the cost of ornamental brick by defendant, was made by the defendant's architect *at the solicitation of the plaintiff after said specifications and bill had been submitted to and approved by defendant, and that with the purpose and intent of binding defendant to the change without its knowledge,* said architect and the plaintiff obtained defendant's signature to the contract without communicating to defendant the change which was made in said specifications, such conduct was fraudulent on their part, and the interlineation or addition, if so made, would in that case be void and not binding upon the defendant, unless the jury should also find that at some later time the defendant learned of such alteration of the specifications and consented thereto."

Appeal from St. Louis County Circuit Court.—*Hon. Rudolph Hirzel,* Judge.

AFFIRMED.

### STATEMENT OF THE CASE.

This action is by the contractor against the owner. The first count in the petition alleges the breach of a written contract to construct a main building, which contract by agreement was extended to cover the construction of a boiler house. The breach alleged, is the refusal of defendant to pay a balance of $1,005.66 recited in an architect's certificate to be due plaintiff for constructive work and material furnished in the two buildings of defendant. The second count is for a *quantum meruit* for work and material put into the buildings of defendant.

To the first count the defendant made a general denial. To the second count, in addition to its general denial, it set up that the work done on its main building was in pursuance to a written contract, and that the full contract price therefor had

been paid; that the work done on the boiler-house was performed under a separate contract created by the acceptance of a bid for such work at the sum of $3,750, and that this sum had also been paid in full by the defendant. At the conclusion of the trial, the court withdrew from the jury the consideration of the first count. There was a verdict and judgment for defendant on the second count, from which palintiff appealed.

No brief furnished for appellant.

*Stewart, Cunningham & Eliot* for respondent.

(1) Where, by the terms of a contract, a condition is imposed upon a party, without the performance of which he has not complied with his agreement, he must both allege and prove the performance of such condition before he can recover in an action upon the contract. Roy v. Boteler, 40 Mo. App. 213; Williams v. Railroad, 112 Mo. 495; Price v. Protection Company, 77 Mo. App. 236. (2) It is not the duty of the court in a civil case, when not requested, to instruct the jury on every conceivable aspect of the case, and it is not error for it to omit to do so. Wright v. Gillespie, 43 Mo. App. 244; Hurst v. Scammon, 63 Mo. App. 634; Doyle v. Railroad, 113 Mo. 280.

BOND, J.—There was no error in the ruling of the court in sustaining a demurrer to the evidence under the first count of the petition. The cause of action therein stated was for nonpayment by defendant of an amount set forth as due from it in an architect's certificate of final indebtedness. The building contract, however, prescribed that this certificate should be in writing; should recite the work estimated *was done to his satisfaction;* should refer to the main building described in the contract, and should be signed by the architect. The certificate in

this case was not signed by the architect himself; did not confine its estimate to the structure described in the contract, nor did it recite that the work estimated was performed to the satisfaction of the architect, hence, it was not determinative of defendant's liability as it would have been if made in strict accordance with the special written contract of the parties. Chapman v. Railroad, 114 Mo. 542; Williams v. Railroad, 112 Mo. 463; Dinsmore v. Livingston Co., 60 Mo. 241; Rothwell v. Dean, 60 Mo. App. loc. cit. 436   The complaint under review is, therefore, ruled against the appellant.

II.   The next complaint relates to a certain instruction given of the court's motion and at the request of the respondent.

The instruction given for respondent is, to-wit:

"The court instructs the jury that if they believe from the evidence an interlineation in the brickwork specifications providing for the payment of the cost of ornamental brick by defendant, was made by the defendant's architect *at the solicitation of the plaintiff after said specifications and bid had been submitted to and approved by defendant,* and *that with the purpose and intent of binding defendant to the change without its knowledge,* said architect and the plaintiff obtained defendant's signature to the contract without communicating to defendant the change which was made in said specifications, such conduct was fraudulent on their part, and the interlineation or addition, if so made, would in that case be void and not binding upon the defendant, unless the jury should also find that at some later time the defendant learned of such alteration of the specifications and consented thereto."

The above instruction in nowise contravenes the rule, that parties to written contracts are conclusively presumed to note their contents in the absence of fraud or mistake.   The instruction distinctly hypothecates the elements of fraud or deceit, as the condition of non-liability of respondent for the full pro-

visions of its contract. No rule is better settled than the exemption of a party from the obligations of a written contract which has been induced or procured by fraud or deceit. Neither is the record barren of all circumstances from which the fraud predicated in said instruction could be inferred. In the first place, the architect distinctly states that he had no power to act for the respondent in the formation of a building contract. He says: "I was acting as the architect; I did not have any power to agree on prices or anything of that sort; I had a blank form which was simply filled out according to the terms, as I understood the agreement was the agreement made by the parties." Again, it also appears that previous to the interlineation in the contract, a copy of it had been given to the respondent and that subsequently when the respondent, through Sister M. Magdalene, signed the contract, it was presented to her with the signature of plaintiff thereto, and she signed it under a representation that she had been given an exact copy of it. On this point she testifies to-wit: "Q. You could have read these papers over if you wanted to? A. Yes, sir; if I had stayed there about two hours I might have read them through, but I didn't think there was any necessity for that. They told me it was an exact copy of what I had at the house." There was also evidence, showing that prior to her actual signature, the architect, after a conversation with the plaintiff on the subject of pay for the ornamental brick, and with plaintiff's knowledge, had inserted in the contract in question an obligation on the part of respondent to pay for such brick, and that no such clause was contained in the copy of the contract which had been furnished to Sister M. Magdalene, the representative of respondent. From these, and other circumstances in the record, the jury might well have inferred that the plaintiff and the architect, by the alteration of the terms of the contract after a copy had been furnished to respondent, concurred in the at-

tempt to perpetrate a fraud, in which view of the case any misrepresentation whereby either of them induced respondent's agent to sign the altered contract without reading, would render it inoperative. For this reason, also, the instruction given of the court's motion, complained of by appellant, is not subject to attack, because it permitted a verdict for defendant if the jury found either the plaintiff or the architect willfully concealed from the respondent the alteration of the contract which was made at plaintiff's request.

The jury evidently found that the defendant had paid the full price stipulated in the respective contracts which it made for the construction of its main building and boiler-house, hence, there is no merit in the contention that the defendant accepted the fruits of its contracts and repudiated the burden.

The verdict in this case having been secured without the intervention of legal error, the judgment is, therefore, affirmed. All concur.